# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

**UNITED STATES OF AMERICA**,

Plaintiff,

v.

**GOODRX HOLDINGS, INC.**, a corporation, also d/b/a GoodRx, GoodRx Gold, GoodRx Care, HeyDoctor, and HeyDoctor by GoodRx;

Defendant.

**Case No. 3:23-cv-460**

**STIPULATED ORDER FOR PERMANENT INJUNCTION, CIVIL PENALTY JUDGMENT, AND OTHER RELIEF**

Plaintiff, the United States of America, acting upon notification and authorization to the Attorney General by the Federal Trade Commission ("Commission" or "FTC"), filed its Complaint for Permanent Injunction, Civil Penalties, and Other Relief ("Complaint") in this matter, pursuant to Sections 5(a)(1), 5(m)(1)(A), 13(b), 16(a)(1), and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a)(1), 45(m)(1)(A), 53(b), 56(a)(1), 57b, and the Health Breach Notification Rule ("HBNR"), 16 C.F.R. § 318. Defendant has waived service of the summons and the Complaint. Plaintiff and Defendant stipulate to the entry of this Stipulated Order for Permanent Injunction, Civil Penalty Judgment, and Other Relief ("Order") to resolve all matters in dispute in this action between them.

THEREFORE, IT IS ORDERED as follows:

## FINDINGS

1.      This Court has jurisdiction over this matter.

2.      The Complaint charges that Defendant participated in deceptive and unfair acts or

practices in violation of Section 5 of the FTC Act in the disclosure of health and personal information to third parties, the failure to limit third-party use of health information, the misrepresentation of compliance with the Digital Advertising Alliance principles, the misrepresentation that consumer's health information was protected under the Health Insurance Portability and Accountability Act ("HIPAA"), the failure to implement sufficient policies or procedures to prevent the improper or unauthorized disclosure of health information, or to notify users of breaches of that information, and the failure to provide notice and obtain consent before the use and disclosure of health information for advertising.  The Complaint also charges that Defendant violated the HBNR by failing to notify individuals and the Commission of a Breach of Security of Unsecured PHR Identifiable Health Information (as defined herein).

3.      Defendant neither admits nor denies any of the allegations in the Complaint, except as specifically stated in this Order.  Only for purposes of this action, Defendant admits the facts necessary to establish jurisdiction.

4.      Defendant waives any claim that it may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agrees to bear its own costs and attorney fees.  Defendant waives and releases any claims that it may have against Plaintiff that relate to this action.  The parties agree that this Order resolves all allegations in the Complaint.

5.      Defendant and the Plaintiff waive all rights to appeal or otherwise challenge or contest the validity of this Order.

## DEFINITIONS

For the purpose of this Order, the following definitions apply:

A.      "**Affirmative Express Consent**" means any freely given, specific, informed and unambiguous indication of an individual's wishes demonstrating agreement by the individual, such as by a clear affirmative action, following a Clear and Conspicuous disclosure to the individual, apart from any "privacy policy," "terms of service," "terms of use," or other similar document, of all information material to the provision of consent.  Acceptance of a general or broad terms of use or similar document that contains descriptions of agreement by the individual

along with other, unrelated information, does not constitute Affirmative Express Consent. Hovering over, muting, pausing, or closing a given piece of content does not constitute Affirmative Express Consent.  Likewise, agreement obtained through use of user interface designed or manipulated with the substantial effect of subverting or impairing user autonomy, decision-making, or choice, does not constitute Affirmative Express Consent.

B.      "**App Event**" means any data disclosed to, or collected by, a Third Party via its Software Development Kit, application programing interface, pixel, or other method for tracking users' interactions with Defendant's services or products.

C.      "**Breach of Security**" means with respect to Unsecured PHR Identifiable Health Information of an individual in a Personal Health Record, acquisition of such information without the authorization of the individual.  Unauthorized acquisition will be presumed to include unauthorized access to Unsecured PHR identifiable health information unless the vendor of personal health records, PHR related entity, or third party service provider that experienced the breach has reliable evidence showing that there has not been, or could not reasonably have been, unauthorized acquisition of such information.

D.      "**Clear and Conspicuous**" or "**Clearly and Conspicuously**" means that a required disclosure is difficult to miss (i.e., easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

1.      In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented.  In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure ("triggering representation") is made through only one means.

2.      A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

3.      An audible disclosure, including by telephone or streaming video, must be

delivered in a volume, speed, and cadence sufficient for ordinary consumers to hear it easily and understand it.

4.    In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable.

5.    The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the triggering representation appears.

6.    The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

7.    The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

8.    When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

E.    "**Defendant**" means GoodRx Holdings, Inc., doing business as GoodRx, GoodRx Gold, GoodRx Care, HeyDoctor, HeyDoctor by GoodRx, its successors and assigns, and its wholly or partially owned subsidiaries, including GoodRx Intermediate Holdings, Inc., GoodRx, Inc., Iodine, Inc., HeyDoctor, LLC, Lighthouse Acquisition Corp., Scriptcycle, LLC, HealthiNation, Inc., Buckeye Acquisition, LLC, RxSaver, Inc., flipMD, Inc., Pharmacy Services, LLC, and VitaCare Prescription Services, Inc.

F.    "**Covered Business**" means Defendant and any business that Defendant controls, directly or indirectly.

G.    "**Covered Incident**" means any instance of a violation of Section I, II, or III of this Order.

H.    "**Covered Information**" means information from or about an individual consumer, including but not limited to Personal Information, Health Information, or PHR Identifiable Health Information.

I.    "**Covered User**" means any individual who used Defendant's websites or downloaded Defendant's mobile applications between July 2017 through April 2020.

J.      "**Delete**" "**Deleted**" or "**Deletion**" means to remove information such that it is not maintained in retrievable form and cannot be retrieved in the normal course of business.

K.      "**Health Care Provider**" means a provider of services (as defined in 42 U.S.C. § 1395x(u)), a provider of medical or other services (as defined in 42 U.S.C. § 1395x(s)), and any other person furnishing healthcare services or supplies.

L.      "**Health Information**" means individually identifiable information relating to the past, present, or future physical or mental health or conditions of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual; and any individually identifiable health information that is derived or extrapolated from information about an individual's activities, or pattern of activities, from which a determination is made that the individual has a health condition or is taking a drug.

M.      "**Individually Identifiable Health Information**" means any information, including demographic information collected from an individual, that: (1) is created or received by a Health Care Provider, health plan, employer, or health care clearinghouse; and (2) relates to the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual, and: (a) identifies the individual; or (b) with respect to which there is a reasonable basis to believe that the information can be used to identify the individual.

N.      "**Personal Health Record**" means an electronic record of PHR Identifiable Health Information on an individual that can be drawn from multiple sources and that is managed, shared, and controlled by or primarily for the individual.

O.      "**Personal Information**" means any individually identifiable information about an individual collected online, including: (1) a first and last name; (2) home or other physical address including street name and name of a city or town; (3) online contact information, meaning an email address or any other substantially similar identifier that permits direct contact with a person online, including but not limited to an instant messaging user identifier, a voice over internet protocol (VOIP) identifier, or a video chat identifier; (4) a screen or user name where it functions in the same manner as online contact information; (5) a telephone number; (6)

a Social Security number; (7) a persistent identifier that can be used to recognize a user over time and across different websites or online services, including but not limited to a customer number held in a "cookie," an Internet Protocol ("IP") address, a mobile device ID, a processor or device serial number, or unique identifier; (8) geolocation information sufficient to identify street name and name of a city or town; (9) a driver's license or other government-issued identification number; (10) a financial institution account number; (11) credit or debit card information; or (12) any information combined with any of (1) through (11) above.

      P.      "**PHR Identifiable Health Information**" means Individually Identifiable Health Information and, with respect to an individual, information: (1) that is provided by or on behalf of the individual; and (2) that identifies the individual or with respect to which there is a reasonable basis to believe that the information can be used to identify the individual.

      Q.      "**Third Party**" or "**Third Parties**" means any individual or entity other than: (1) Defendant; (2) an entity with which Defendant has a business associate agreement complying with 45 C.F.R. Part 164.504(e)(2)(ii)(A); (3) a pharmacy facilitating the consumer obtaining a discount for a prescription or medical services; (4) a service provider or partner of Defendant that: (i) uses or receives Covered Information collected by or on behalf of Defendant for and at the direction of Defendant and no other individual or entity, or to process, provide access to, or facilitate transactions for prescriptions, treatments, or medical services; (ii) does not disclose the data, or any individually identifiable information derived from such data, to any individual or entity other than Defendant or a subcontractor to such service provider or partner bound to data processing terms no less restrictive than terms to which the service provider or partner is bound, unless for the specific purpose of performing the services specified in the contract; and (iii) does not use the data for any purpose other than the purposes in (Q)(4)(i) or for internal use to provide, maintain, improve, or secure the services provided to Defendant, provided that internal use does not include using Covered Information obtained from Defendant to build or modify household or consumer profiles to use in providing services to another business, or to correct or augment data acquired from another source; or (5) any entity that uses Covered Information only as reasonably necessary: (i) to comply with applicable law, regulation, or legal process, (ii) to

enforce Defendant's terms of use, or (iii) to detect, prevent, or mitigate fraud or security vulnerabilities.

R.      **"Unsecured"** means PHR Identifiable Health Information that is not protected through the use of a technology or methodology specified by the Secretary of Health and Human Services in the guidance issued under section 13402(h)(2) of the American Reinvestment and Recovery Act of 2009.

## ORDER

### I.   BAN ON DISCLOSURE OF HEALTH INFORMATION FOR ADVERTISING PURPOSES

IT IS ORDERED that:

A.      Defendant, Defendant's officers, agents, employees, and attorneys who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from disclosing Health Information to Third Parties for Advertising Purposes.

B.      For purposes of this Section, "Advertising Purposes" means advertising, marketing, promoting, offering, offering for sale, or selling any products or services on, or through Third Party websites, mobile applications, or services.  Advertising Purpose shall not include: (i) reporting and analytics related to understanding advertising and advertising effectiveness, such as statistical reporting, traffic analysis, understanding the number of and type of ads served, or conversion measurement; or (ii) communications, services, or products requested by a consumer that are sent or provided to the consumer; or (iii) contextual advertising, meaning non-personalized advertising shown as part of a consumer's current interaction with Defendant's websites or mobile applications, provided that the consumer's Covered Information is not disclosed to another Third Party and is not used to build a profile about the consumer or otherwise alter the consumer's experience outside the current interaction with Defendant's websites or mobile application.

C.      For purposes of this Section, Health Information shall not include (a) a pharmacy name (except for any specialty or other pharmacies that provide medications or services that are limited to treating a specific health condition); or (b) general engagement with or use of

Defendant's services or content, such as accessing general pricing information, provided that such engagement or use does not reveal an individual's Personal Information combined with (i) information about a medication or class of medication(s) that an individual is prescribed, has purchased, or is taking steps to purchase or obtain by accessing, downloading, or requesting a coupon, or taking other steps to purchase or obtain such medication or class of medication(s), or (ii) information that reveals an individual's health status, or that an individual has or is seeking treatment for a specific health condition or conditions.

## II.   PROHIBITION AGAINST MISREPRESENTATIONS

IT IS FURTHER ORDERED that Defendant, Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any product or service are permanently restrained and enjoined from misrepresenting or assisting others in misrepresenting, expressly or by implication:

A.      the purposes for which Defendant or any entity to whom it discloses Covered Information collects, maintains, uses, or discloses Covered Information;

B.      the extent to which consumers may exercise control over Defendant's collection, maintenance, use, disclosure, or Deletion of Covered Information, and the steps a consumer must take to implement such controls;

C.      the extent to which Defendant is a member of, adheres to, complies with, is certified by, is endorsed by, or otherwise participates in any privacy, security, or any other compliance program sponsored by a government or any self-regulatory or standard-setting organization, including the Digital Advertising Alliance, the Digital Advertising Accountability Program, or any entity that certifies compliance with HIPAA;

D.      the extent to which Defendant is a HIPAA-covered entity, and the extent that Defendant's privacy and information practices are in compliance with HIPAA requirements; and

E.      the extent to which Defendant collects, maintains, uses, discloses, Deletes, or permits or denies access to any Covered Information, or the extent to which Defendant protects the availability, confidentiality, or integrity of any Covered Information.

### III.   PROHIBITION AGAINST DISCLOSURE OF HEALTH INFORMATION WITHOUT AFFIRMATIVE EXPRESS CONSENT AND NOTICE

IT IS FURTHER ORDERED that:

A.      Defendant, Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them who receive actual notice of this Order, whether acting directly or indirectly, in connection with the sale of any product or service, are permanently restrained and enjoined from disclosing Health Information to Third Parties for Non-Advertising Purposes without first obtaining Affirmative Express Consent.

B.      For purposes of this Section, Non-Advertising Purposes means all purposes other than: (i) Advertising Purposes as defined in Section I of this Order; (ii) communications, services, or products requested by a consumer that are sent or provided by Defendant directly to the consumer, such as Defendant texting, emailing, or mailing a consumer, or showing content on Defendant's own properties to a consumer; and (iii) contextual advertising, meaning non-personalized advertising shown as part of a consumer's current interaction with Defendant's websites or mobile applications, including associated ad serving and response mechanisms, provided that the consumer's Covered Information is not disclosed to another Third Party and is not used to build a profile about the consumer or otherwise alter the consumer's experience outside the current interaction with Defendant's websites or mobile applications.

C.      For purposes of this Section, Health Information shall not include (a) a pharmacy name (except for any specialty or other pharmacies that provide medications or services that are limited to treating a specific health condition); or (b) general engagement with or use of Defendant's services or content, such as accessing general pricing information, provided that such engagement or use does not reveal an individual's Personal Information combined with (i) information about a medication or class of medication(s) that an individual is prescribed, has purchased, or is taking steps to purchase or obtain by accessing, downloading, or requesting a coupon, or taking other steps to purchase or obtain such medication or class of medication(s), or (ii) information that reveals an individual's health status, or that an individual has or is seeking treatment for a specific health condition or conditions.

D.      When obtaining Affirmative Express Consent required under this Section, Defendant must provide notice Clearly and Conspicuously that states the categories of Health Information that will be disclosed to Third Parties, the identities of such Third Parties (where a consumer is using a physical, non-electronic discount card, Defendant need only disclose the category of such Third Parties), and all purposes for Defendant's disclosure of such Health Information, including how it may be used by each Third Party.

E.      It shall not be a violation of this Section if Defendant discloses Health Information to Third Parties for Non-Advertising Purposes without first obtaining Affirmative Express Consent, if Defendant proves that: (1) the information is "protected health information," defined under 45 C.F.R. Section 160.103, and pursuant to the Health Insurance Portability and Accountability Act of 1996, as amended, including by the Health Information Technology for Economic and Clinical Health Act ("HITECH") (collectively, "HIPAA"); (2) Defendant made such disclosure in its capacity as a covered entity or business associate, as defined under 45 C.F.R. Section 160.103; and (3) any such disclosure was either required or permitted under 45 C.F.R. Part 160 and Part 164, Subparts A and E (the "HIPAA Privacy Rule").

## IV.      HEALTH BREACH NOTIFICATIONS

IT IS FURTHER ORDERED that:

A.      Defendant, for any Covered Business, following the discovery of a Breach of Security of Unsecured PHR Identifiable Health Information that is in a Personal Health Record maintained or offered by Defendant (including, but not limited to, the GoodRx, GoodRx Gold, GoodRx Care, and/or HeyDoctor websites or mobile applications), shall:

1.      notify each individual who is a citizen or resident of the United States whose Unsecured PHR Identifiable Health Information was acquired by an unauthorized person as a result of such Breach of Security;

2.      notify the Federal Trade Commission, in accordance with Subsection IV(E) below; or

3.      notify prominent media outlets in a state or jurisdiction, if the Unsecured PHR Identifiable Health Information of five hundred (500) or more residents of such state or

STIPULATED ORDER FOR PERMANENT INJUNCTION,                 Case No. 3:23-cv-460
CIVIL PENALTY JUDGMENT, AND OTHER RELIEF

10

jurisdiction is, or is reasonably believed to have been, acquired during such Breach of Security.

B.     For the purposes of this Section, a Breach of Security shall be treated as discovered as of the first day on which such breach is known or reasonably should have been known to Defendant.  Defendant shall be deemed to have knowledge of a Breach of Security if such breach is known, or reasonably should have been known, to any person, other than the person committing the breach, who is an employee, officer, or other agent of Defendant.

C.     Except as otherwise provided, all notifications to individuals or the media required under this Section shall be sent without unreasonable delay and in no case later than sixty (60) calendar days after the discovery of the Breach of Security.  If a law enforcement official determines that a notification, notice, or posting required under this Section would impede a criminal investigation or cause damage to national security, such notification, notice, or posting shall be delayed.  This Subsection shall be implemented in the same manner as provided under 45 C.F.R. Section 164.528(a)(2), in the case of a disclosure covered under such section.

D.     If Defendant provides notice under Subsection IV(A)(1), it shall do so by providing it in the following form:

1.     Written notice, by first-class mail to the individual at the last known address of the individual, or by email or within-application messaging, if the individual is given a clear, conspicuous, and reasonable opportunity to receive notification by first-class mail, and the individual does not exercise that choice.  If the individual is deceased, Defendant must provide such notice to the next of kin of the individual if the individual had provided contact information for his or her next of kin, along with authorization to contact them.  The notice may be provided in one or more mailings as information is available.

2.     If, after making reasonable efforts to contact all individuals to whom notice is required under Subsection IV(A)(1), through the means provided in Subsection IV(D)(1), Defendant finds that contact information for ten (10) or more individuals is insufficient or out-of-date, Defendant shall provide substitute notice, which shall be reasonably calculated to reach the individuals affected by the Breach of Security, in the following form:

a.     Through a conspicuous posting for a period of ninety (90) days on the

home page of its website; or

b.      In major print or broadcast media, including major media in geographic areas where the individuals affected by the Breach of Security likely reside.  Such a notice in media or web posting shall include a toll-free phone number, which shall remain active for at least ninety (90) days, where an individual can learn whether or not the individual's PHR Identifiable Health Information may be included in the Breach of Security.

3.      In any case deemed by Defendant to require urgency because of possible imminent misuse of Unsecured PHR Identifiable Health Information, Defendant may provide information to individuals by telephone or other means, as appropriate, in addition to notice provided under Subsection IV(E)(1).

E.      Defendant shall, in accordance with Subsection IV(A)(2), provide notice to the Federal Trade Commission following the discovery of a Breach of Security.  If the Breach of Security involves the Unsecured PHR Identifiable Health Information of five hundred (500) or more individuals, then such notice shall be provided as soon as possible and in no case later than ten (10) business days following the date of discovery of the Breach of Security.  If the Breach of Security involves the Unsecured PHR Identifiable Health Information of fewer than five hundred (500) individuals, Defendant may maintain a log of any such Breach of Security, and submit such a log annually to the Federal Trade Commission no later than sixty (60) calendar days following the end of the calendar year, documenting Breaches of Security from the preceding calendar year.  Unless otherwise directed by a Commission representative in writing, Defendant must submit all notices and logs required under this Section to: DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580.  The subject line must begin: "U.S. v. GoodRx Holdings, Inc."

F.      Regardless of the method by which notice is provided to individuals, the Federal Trade Commission, or the media under this Section, notice of a Breach of Security shall be in plain language and include, to the extent possible, the following:

1.      A brief description of what happened, including the date of the Breach of Security and the date of the discovery of the Breach of Security, if known;

2.      A description of the types of PHR Identifiable Health Information that were involved in the Breach of Security (such as full name, Social Security number, date of birth, home address, account number, or disability code);

3.      Steps individuals should take to protect themselves from potential harm resulting from the Breach of Security;

4.      A brief description of what the entity that suffered the Breach of Security is doing to investigate the breach, to mitigate harm, and to protect against any further breaches; and

5.      Contact procedures for individuals to ask questions or learn additional information, which shall include a tollfree telephone number, an email address, website, or postal address.

## V.      NOTICE TO USERS

IT IS FURTHER ORDERED that, within fourteen (14) days of entry of this Order, Defendant shall post Clearly and Conspicuously on Defendant's websites and mobile applications, including, www.GoodRx.com, www.gold.goodrx.com/login, www.Goodrx.com/care/login, the GoodRx Care mobile application, and the GoodRx prescription coupon mobile applications, a link to an exact copy of the notice attached hereto as Exhibit A ("Notice") and email the Notice to all Covered Users for whom Defendant has email information.  Defendant shall not include with the Notice any other information, documents, or attachments.  Defendant shall keep the notice posted on the above-listed websites and mobile applications continuously for a period of one hundred and eighty (180) days following the date of entry of this Order.

## VI.      DELETION OF COVERED INFORMATION

IT IS FURTHER ORDERED that, within sixty (60) days of entry of this Order:

A.      Defendant must identify all Third Parties and all entities identified in the Complaint ("Complaint Entity" or "Complaint Entities") that received Health Information, identify the Covered Information of Covered Users received by each such Third Party or

Complaint Entities, provide a copy of the Complaint and Order to all Third Parties and Complaint Entities that received Health Information of Covered Users, notify all such Third Parties and Complaint Entities in writing that the Federal Trade Commission alleges that Defendant disclosed Covered Information of Covered Users to them in a manner that was unfair or deceptive and in violation of the FTC Act, instruct all such Third Parties and Complaint Entities to Delete all Covered Information of Covered Users received from Defendant, and demand written confirmation that all the identified Covered Information has been Deleted. Defendant's instruction to each such Third Party and Complaint Entities shall include a description of the Covered Information of Covered Users shared with the Third Party or Complaint Entities.  Defendant must provide all instructions sent to the Third Parties and Complaint Entities to: DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580.  The subject line must begin: "U.S. v. GoodRx Holdings, Inc."

B.       Defendant shall not disclose any Covered Information in any form, including hashed or encrypted Covered Information, to any Third Party or Complaint Entities identified in Subsection A above until Defendant confirms each Third Party and Complaint Entity's receipt of the instructions required by Subsection A above.  Defendant must provide all receipts of confirmation and any responses from Third Parties or Complaint Entities within five (5) days of receipt to: DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580.  The subject line must begin: "U.S. v. GoodRx Holdings, Inc."

C.       Defendant shall not use any Third Party or Complaint Entity identified in Subsection A above to advertise, market, promote, offer, offer for sale, or sell any product or service until Defendant confirms each Third Party and Complaint Entity's receipt of the instructions required by Subsection A above.

### VII.    MANDATED PRIVACY PROGRAM

IT IS FURTHER ORDERED that any Covered Business, in connection with the collection, maintenance, use, disclosure of, or provision of access to, Covered Information, must, within one hundred eighty (180) days of entry of this Order, establish and implement, and thereafter maintain, a comprehensive privacy program ("Privacy Program") that protects the privacy, security, availability, confidentiality, and integrity of such Covered Information.  To satisfy this requirement, Defendant must, at a minimum:

A.    Document in writing the content, implementation, and maintenance of the Privacy Program;

B.    Provide the written program and any evaluations thereof or updates thereto to each Covered Business's board of directors or governing body or, if no such board or equivalent governing body exists, to a senior officer of the Covered Business responsible for the Covered Business's Privacy Program at least once every twelve (12) months and promptly (not to exceed thirty (30) days) after a Covered Incident;

C.    Designate a qualified employee or employees, who report(s) directly to the Chief Executive Officer(s) or, in the event a Chief Executive Officer role does not exist, a similarly-situated executive, to coordinate and be responsible for the Privacy Program; and keep the Chief Executive Officer(s) and Board of Directors informed of the Privacy Program, including all actions and procedures implemented to comply with the requirements of this Order, and any actions and procedures to be implemented to ensure continued compliance with this Order;

D.    Assess and document, at least once every twelve (12) months and promptly (not to exceed thirty (30) days) following a Covered Incident, internal and external risks in each area of the Covered Business's operations to the privacy, security, availability, confidentiality, and integrity of Covered Information that could result in the unauthorized access, collection, use, destruction, or disclosure of, or provision of access to, Covered Information;

E.    Design, implement, maintain, and document safeguards that control for the internal and external risks to the privacy, security, availability, confidentiality, and integrity of Covered Information identified by each Covered Business in response to Subsection VII.D.

Each safeguard must be based on the volume and sensitivity of the Covered Information that is at risk, and the likelihood that the risk could be realized and result in the unauthorized access, collection, use, destruction, disclosure of, or provision of access to, the Covered Information. Such safeguards must also include:

1.      policies, procedures, and technical measures to systematically inventory Covered Information in the Covered Business's control and Delete Covered Information that is no longer necessary;

2.      policies, procedures, and technical measures to prevent the collection, maintenance, use, or disclosure of, or provision of access to, Covered Information inconsistent with the Covered Business's representations to consumers;

3.      audits, assessments, and reviews of the contracts, privacy policies, and terms of service associated with any Third Party to which each Covered Business discloses, or provides access to Covered Information;

4.      policies, procedures, and controls to ensure that each Covered Business complies with Sections I-IV above;

5.      policies and technical measures that limit employee and contractor access to Covered Information to only those employees and contractors with a legitimate business need to access such Covered Information;

6.      mandatory privacy training programs for all employees on at least an annual basis, updated to address: the collection, use, and disclosure of Covered Information; any internal or external risks identified by each Covered Business in Subsection VII(D); and safeguards implemented pursuant to Subsection VII(E), that includes training on the requirements of this Order;

7.      a data retention policy that, at a minimum, includes:

a.      a retention schedule that limits the retention of Covered Information for only as long as is reasonably necessary to fulfill the purpose for which the Covered Information was collected; provided, however, that such Covered Information need not be destroyed, and may be disclosed, to the extent

requested by a government agency or required by law, regulation, or court order; and

      b.    a requirement that each Covered Business document, adhere to, and make publicly available in its terms of service or terms of use a retention schedule for Covered Information, setting forth: (1) the purposes for which such information is collected; (2) the specific business need for retaining each type of Covered Information; and (3) a set timeframe for Deletion of each type of Covered Information (absent any intervening Deletion requests from consumers) that precludes indefinite retention of any Covered Information;

8.      For each product or service, policies and procedures to document internally the decision to collect, use, disclose, or maintain each type of Covered Information.  Such documentation should include: (a) the name or names of the person or people who made the decision; (b) for what purpose the type of Covered Information is being collected; (c) the data segmentation controls in place to ensure that the type of Covered Information collected is only used for the particular purpose for which it was collected; (d) the data retention limit set for each type of Covered Information and the technical means for achieving Deletion; (e) the safeguards in place to prevent disclosure or sale of each type of Covered Information; and (f) the access controls in place to ensure only authorized employees with a need-to-know have access to each type of Covered Information;

9.      audits, assessments, reviews, or testing of web pixels and Software Development Kits, and their associated Third Parties, to which each Covered Business discloses or provides access to Covered Information.

F.      Assess, at least once every twelve (12) months and promptly (not to exceed thirty (30) days) following a Covered Incident, the sufficiency of any safeguards in place to address the internal and external risks to the privacy, security, availability, confidentiality, and integrity of Covered Information, and modify the Privacy Program based on the results;

G.      Test and monitor the effectiveness of the safeguards at least once every twelve (12) months and promptly (not to exceed thirty (30) days) following a Covered Incident, and modify the Privacy Program based on the results;

H.      Select and retain service providers capable of safeguarding Covered Information they receive from the Covered Business, and contractually require service providers to implement and maintain safeguards for Covered Information;

I.      Evaluate and adjust the Privacy Program in light of any material changes to each Covered Business's operations or business arrangements, the results of the testing and monitoring required by Subsection VII(F), a Covered Incident, new or more efficient technological or operational methods to control for the risks identified in Subsection VII(D), and any other circumstances that the Covered Business knows or has reason to believe may have a material impact on the effectiveness of the Privacy Program or any of its individual safeguards. The Covered Business may make this evaluation and adjustment to the Privacy Program at any time, but must, at a minimum, evaluate the Privacy Program at least once every twelve (12) months and modify the Program as necessary based on the results.

## VIII.    PRIVACY ASSESSMENT BY A THIRD PARTY

IT IS FURTHER ORDERED that, in connection with compliance with Section VII, for any Covered Business that collects, maintains, uses, discloses, or provides access to Covered Information, Defendant must obtain initial and biennial assessments ("Assessments"):

A.      The Assessments must be obtained from one or more qualified, objective, independent third-party professionals ("Assessor(s)") who: (1) uses procedures and standards generally accepted in the profession; (2) conducts an independent review of the Privacy Program; (3) retains all documents relevant to each Assessment for five (5) years after completion of such Assessment; and (4) will provide such documents to the Commission within ten (10) days of receipt of a written request from a representative of the Commission.  No documents may be withheld on the basis of a claim of confidentiality, proprietary or trade secrets, work product protection, attorney client privilege, statutory exemption, or any similar claim.  The Assessor(s) must have a minimum of three (3) years of experience in the field of

privacy and data protection.

B.     For each Assessment, Defendant must provide the Associate Director for Enforcement for the Bureau of Consumer Protection at the Federal Trade Commission with the name, affiliation, and qualifications of the proposed Assessor, whom the Associate Director shall have the authority to approve in his or her sole discretion.

C.     The reporting period for the Assessments must cover: (1) the first year after the entry of this Order for the initial Assessment; and (2) each two (2) year period thereafter for twenty (20) years after the entry of this Order for the biennial Assessments.

D.     Each Assessment must, for the entire assessment period:

E.     determine whether Defendant has implemented and maintained the Privacy Program required by Section VII;

F.     assess the effectiveness of Defendant's implementation and maintenance of Subsections VII(A)-(I);

G.     identify any gaps or weaknesses in the Privacy Program or instances of material noncompliance with Subsections VII(A)-(I);

H.     address the status of gaps or weaknesses in the Privacy Program, as well as any instances of material non-compliance with Subsections VII(A)-(I), that were identified in any prior Assessment required by this Order; and

I.     identify specific evidence (including, but not limited to, documents reviewed, sampling and testing performed, and interviews conducted) examined to make such determinations, assessments, and identifications, and explain why the evidence that the Assessor examined is: (a) appropriate for assessing an enterprise of Defendant's size, complexity, and risk profile; and (b) sufficient to justify the Assessor's findings.  No finding of any Assessment shall rely solely on assertions or attestations by Defendant, Defendant's management, or a Covered Business's management.  The Assessment must be signed by the Assessor, state that the Assessor conducted an independent review of the Privacy Program and did not rely solely on assertions or attestations by Defendant, Defendant's management, or a Covered Business's management and state the number of hours that each member of the Assessor's assessment team

worked on the Assessment.  To the extent Defendant revises, updates, or adds one or more safeguards required under Subsection VII(E) in the middle of an Assessment period, the Assessment must assess the effectiveness of the revised, updated, or added safeguard(s) for the time period in which it was in effect, and provide a separate statement detailing the basis for each revised, updated, or additional safeguard.

J.      Each Assessment must be completed within sixty (60) days after the end of the reporting period to which the Assessment applies.  Unless otherwise directed by a Commission representative in writing, Defendant must submit the initial Assessment to the Commission within ten (10) days after the Assessment has been completed via email to DEbrief@ftc.gov or by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580.  The subject line must begin, "U.S. v. GoodRx Holdings, Inc."  All subsequent biennial Assessments must be retained by Defendant until the Order is terminated and provided to the Associate Director for Enforcement within ten (10) days of request.

## IX.    COOPERATION WITH ASSESSOR

IT IS FURTHER ORDERED that Defendant, whether acting directly or indirectly, in connection with the Assessments required by Section VIII, must:

A.      provide or otherwise make available to the Assessor all information and material in their possession, custody, or control that is relevant to the Assessment for which there is no reasonable claim of privilege;

B.      provide or otherwise make available to the Assessor information about all Covered Information in Defendant's custody or control so that the Assessor can determine the scope of the Assessment; and

C.      disclose all material facts to the Assessor, and not misrepresent in any manner, expressly or by implication, any fact material to the Assessor's: (1) determination of whether Defendant has implemented and maintained the Privacy Program required by Section VII; (2) assessment of the effectiveness of the implementation and maintenance of Subsections VII(A)-(I); or (3) identification of any gaps or weaknesses in, or instances of material noncompliance

with, the Privacy Program required by Section VII.

## X.      ANNUAL CERTIFICATION

IT IS FURTHER ORDERED that Defendant must:

A.      One year after the entry of this Order, and each year thereafter, provide the Commission with a certification from a senior corporate manager, or, if no such senior corporate manager exists, a senior officer of each Covered Business that: (1) the Covered Business has established, implemented, and maintained the requirements of this Order; (2) the Covered Business is not aware of any material noncompliance that has not been: (a) corrected, or (b) disclosed to the Commission; and (3) includes a brief description of any Covered Incident.  The certification must be based on the personal knowledge of the senior corporate manager, senior officer, or subject matter experts upon whom the senior corporate manager or senior officer reasonably relies in making the certification.

B.      Unless otherwise directed by a Commission representative in writing, submit all annual certifications to the Commission pursuant to this Order via email to DEbrief@ftc.gov or by overnight courier (not the U.S. Postal Service) to Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, D.C. 20580.  The subject line must begin, "U.S. v. GoodRx Holdings, Inc."

## XI.      COVERED INCIDENT REPORTS

IT IS FURTHER ORDERED that Defendant, within thirty (30) days after discovery of a Covered Incident, must submit a report to the Commission, unless the Covered Incident also constitutes a Breach of Security involving the Unsecured PHR Identifiable Health Information of 500 or more individuals and therefore requiring notice under Section IV of this Order.  The report must include, to the extent possible:

A.      the date, estimated date, or estimated date range when the Covered Incident occurred;

B.      a description of the facts relating to the Covered Incident, including the causes and scope of the Covered Incident, if known;

C.      the number of consumers whose information was affected;

D.      the acts that Defendant has taken to date to remediate the Covered Incident; protect Covered Information from further disclosure, exposure, or access; and protect affected individuals from identity theft or other harm that may result from the Covered Incident; and

E.      a representative copy of any materially different notice sent by Defendant to consumers or to any U.S. federal, state, or local government entity.

Unless otherwise directed by a Commission representative in writing, all Covered Incident reports to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580.  The subject line must begin: "U.S. v. GoodRx Holdings, Inc."

## XII.      MONETARY JUDGMENT FOR CIVIL PENALTY

IT IS FURTHER ORDERED that:

A.      Judgment in the amount of $1,500,000 is entered in favor of Plaintiff against Defendant as a civil penalty.

B.      Defendant is ordered to pay to Plaintiff, by making payment to the Treasurer of the United States, $1,500,000, which, as Defendant stipulates, their undersigned counsel holds in escrow for no purpose other than payment to Plaintiff.  Such payment must be made within 7 days of entry of this Order by electronic fund transfer in accordance with instructions previously provided by a representative of Plaintiff.

## XIII.      ADDITIONAL MONETARY PROVISIONS

IT IS FURTHER ORDERED that:

A.      Defendant relinquishes dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

B.      The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission, including in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order.

C.      Defendant acknowledges that its Taxpayer Identification Numbers, or Employer Identification Numbers, which Defendant previously submitted to the Commission, may be used

for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

## XIV.    ORDER ACKNOWLEDGMENTS

IT IS FURTHER ORDERED that Defendant obtain acknowledgments of receipt of this Order:

A.    Defendant, within seven (7) days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.    For 20 years after entry of this Order, for any business that Defendant is the majority owner or controls directly or indirectly, Defendant must deliver a copy of this Order to: (1) all principals, officers, directors, and LLC managers and members; (2) all employees having managerial responsibilities for conduct related to the subject matter of the Order and all agents and representatives who participate in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting.  Delivery must occur within seven (7) days of entry of this Order for current personnel.  For all others, delivery must occur before they assume their responsibilities.

C.    From each individual or entity to which Defendant delivered a copy of this Order, Defendant must obtain, within thirty (30) days, a signed and dated acknowledgment of receipt of this Order.

## XV.    COMPLIANCE REPORTING

IT IS FURTHER ORDERED that Defendant make timely submissions to the Commission:

A.    One year after entry of this Order, Defendant must submit a compliance report, sworn under penalty of perjury:

Defendant must: (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission and Plaintiff may use to communicate with Defendant; (b) identify all of that Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business,

including the goods and services offered, and the means of advertising, marketing, and sales; (d) describe in detail whether and how Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

B.      One year after entry of this Order and annually thereafter for 5 years, Defendant must submit a supplemental compliance report, sworn under penalty of perjury, explaining any disclosure of Health Information to Third Parties for Non-Advertising Purposes that was made without first obtaining Affirmative Express Consent in violation of Section III of this Order and not in reliance on Subsection III.E of this Order, including: the type of information disclosed; the purpose for each such disclosure; the part of the Covered Business that made the disclosure, the reason the disclosure was in compliance with the HIPAA Privacy Rule; and the dates of the disclosure.

C.      For 20 years after entry of this Order, Defendant must submit a compliance notice, sworn under penalty of perjury, within fourteen (14) days of any change in the following:

(a) any designated point of contact; or (b) the structure of Defendant or any entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

D.      Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against Defendant within fourteen (14) days of its filing.

E.      Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

F.      Unless otherwise directed by a Commission representative in writing, all

submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580.  The subject line must begin: "U.S. v. GoodRx Holdings, Inc."

## XVI.   RECORDKEEPING

IT IS FURTHER ORDERED that Defendant must create certain records for twenty (20) years after entry of the Order, and retain each such record for five (5) years.  Specifically, Defendant must create and retain the following records:

A.   accounting records showing the revenues from all goods or services sold;

B.   personnel records showing, for each person providing services, whether as an employee or otherwise, that person's: name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.   records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

D.   records describing all disclosures of Health Information or PHR Identifiable Health Information to Third Parties;

E.   records describing all disclosures of App Events to Third Parties;

F.   all records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission; and

G.   a copy of each unique advertisement or other marketing material pertaining to a specific drug or medical condition, and any advertisement that makes claims about the privacy or security of consumers' Health Information.

H.   every six months, a screen capture of Defendant's website and mobile application flows relating to users inputting Covered Information.

## XVII.   COMPLIANCE MONITORING

IT IS FURTHER ORDERED that, for the purpose of monitoring Defendant's compliance with this Order:

A.   Within fourteen (14) days of receipt of a written request from a representative of

the Commission or Plaintiff, Defendant must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying.  The Commission and Plaintiff are also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

   B. For matters concerning this Order, the Commission and Plaintiff are authorized to communicate directly with Defendant.  Defendant must permit representatives of the Commission and Plaintiff to interview any employee or other person affiliated with any Defendant who has agreed to such an interview.  The person interviewed may have counsel present.

   C. The Commission and Plaintiff may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to Defendant or any individual or entity affiliated with Defendant, without the necessity of identification or prior notice.  Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

## XVIII. RETENTION OF JURISDICTION

   IT IS FURTHER ORDERED that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

SO ORDERED this___day of_____, 202__.

_____
UNITED STATES DISTRICT JUDGE

**SO STIPULATED AND AGREED:**
**FOR PLAINTIFF UNITED STATES OF AMERICA:**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

ARUN G. RAO
Deputy Assistant Attorney General, Consumer Protection Branch

AMANDA N. LISKAMM
Acting Director, Consumer Protection Branch

LISA K. HSIAO
Assistant Director, Consumer Protection Branch

/s/    Sarah Williams                              Date: <u>January 24, 2023</u>
SARAH WILLIAMS
Trial Attorney
Consumer Protection Branch
450 5th St NW, Suite 6400-S
Washington, D.C. 20530
Telephone: (202) 616-4269
sarah.williams@usdoj.gov

STEPHANIE M. HINDS
United States Attorney

/s/    Sharanya Mohan
SHARANYA MOHAN
Assistant United States Attorney
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7198
sharanya.mohan@usdoj.gov

OF COUNSEL:

RONNIE SOLOMON
DENISE M. OKI
Attorneys
Federal Trade Commission
Western Region San Francisco

**FOR DEFENDANT**:

_____   Date: _10/21/22_
**Richard H. Cunningham**
**Olivia Adendorff**
**Rachael A. Rezabek**

Kirkland & Ellis, LLP
Counsel for GoodRx Holdings, Inc.
1301 Pennsylvania Ave., N.W.Washington, D.C. 20004
(202) 425-5385
rich.cunningham@kirkland.com
olivia.adendorff@kirkland.com
rachael.rezabek@kirkland.com


**DEFENDANT: GoodRx Holdings, Inc.**


_____   Date: _____October 21 2022_____
Gracye Cheng, Esq.
Senior Vice President and General Counsel

**Exhibit A**

<u>Website and Mobile Application Notice</u>

The Federal Trade Commission alleges that we shared identifiable information about people who visited our website or used our app between July 2017 and April 2020 without their permission. This information included details about drug and health conditions people searched and their prescription medications.  We shared this information with third parties, including Facebook.  In some cases, GoodRx used the information to target people with health-related ads.

The Federal Trade Commission alleges we broke the law by sharing this health information without users' permission.  To resolve the case, we have agreed to an FTC order [notice will include a link to the FTC.gov page with Complaint and Order] requiring that:

- We'll tell applicable third parties (like Facebook) who received that information to delete it.

- We'll never share your health information with applicable third parties (like Facebook) for advertising purposes.

- We won't share your health information with applicable third parties (like Facebook) for other purposes, unless we get your permission first.

- We'll put in place a comprehensive privacy program with heightened procedures and controls to protect your personal and health information.  An independent auditor will review our program to make sure we're protecting your information.  These audits will happen every two years for 20 years.

If you have any questions, email us at privacy@goodrx.com.

To learn more about the settlement, go to ftc.gov and search for "GoodRx".

For advice on protecting your health privacy, read the FTC's Does your health app protect your sensitive info?

<u>Notice to Covered Users</u>

The Federal Trade Commission alleges that between July 2017 and April 2020, you visited GoodRx.com or used the GoodRx app. During this time, we shared identifiable information related to you, including health information, without your permission. This information included details about drug and health conditions you searched and your prescription medications. We shared this information with third parties, including Facebook. In some cases, GoodRx used the information to target you with health-related ads.

The Federal Trade Commission alleges we broke the law by sharing your health information without your permission. To resolve the case, we have agreed to an FTC order [notice will include link to the FTC.gov page with Complaint and Order] requiring that:

- We'll tell applicable third parties (like Facebook) who received that information to delete it.

- We'll never share your health information with applicable third parties (like Facebook) for advertising purposes.

- We won't share your health information with applicable third parties (like Facebook) for other purposes, unless we get your permission first.

- We'll put in place a comprehensive privacy program with heightened procedures and controls to protect your personal and health information. An independent auditor will review our program to make sure we're protecting your information. These audits will happen every two years for 20 years.

If you have any questions, email us at privacy@goodrx.com.

To learn more about the settlement, go to ftc.gov and search for "GoodRx".

For advice on protecting your health privacy, read the FTC's Does your health app protect your sensitive info?

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> Plaintiff, <br><br> v. <br><br> **GOODRX HOLDINGS, INC.**, a corporation, <br> also d/b/a GoodRx, GoodRx Gold, GoodRx <br> Care, HeyDoctor, and HeyDoctor by <br> GoodRx; <br><br> Defendant. | Case No. _____ <br><br> **ACKNOWLEDGMENT BY** <br> **AFFIDAVIT OF RECEIPT OF** <br> **ORDER BY DEFENDANT [*NAME*]** |

A.     My name is _____ , my job title is _____, and I am authorized to accept service of process on GoodRx Holdings, Inc.  I am [a U.S. citizen] over the age of eighteen, and I have personal knowledge of the facts set forth in this Acknowledgment.

B.     GoodRx Holdings, Inc., was a Defendant in U.S. v. GoodRx Holdings, Inc., et al., which is the court case listed near the top of this page.

C.     On [_____, 202\_], I received a copy of the Stipulated Order for Permanent Injunction, Civil Penalty Judgment, and Other Relief, which was signed by the Honorable [*Judge's name*] and entered by the Court on [*Month \_\_\_, 202\_*].  A true and correct copy of the Order that I received is attached to this Acknowledgment.

D.     On [*Month \_\_\_, 202\_*], GoodRx Holdings, Inc., received a copy of the Stipulated Order for Permanent Injunction, Civil Penalty Judgment, and Other Relief, which was signed by

the Honorable [*Judge's name*] and entered by the Court on [*Month ___, 202_*].  The copy of the

Order attached to this Acknowledgment is a true and correct copy of the Order it received.

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.  Executed on [*Month __, 202_*].

_____

[*Full name*]
Officer of
GoodRx Holdings, Inc.

State of _____, City of _____
Subscribed and sworn to before me
this \_\_\_\_\_ day of _____, 202\_\_.

_____
Notary Public
My commission expires:

_____

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | |
| Plaintiff, | **Case No. _____** |
| v. | |
| **GOODRX HOLDINGS, INC.**, a corporation, also d/b/a GoodRx, GoodRx Gold, GoodRx Care, HeyDoctor, and HeyDoctor by GoodRx; | **ACKNOWLEDGMENT BY DECLARATION OF RECEIPT OF ORDER BY A NON PARTY** |
| Defendant. | |

I, _____, received a copy of the Stipulated Order for Permanent Injunction, Civil Penalty Judgment, and Other Relief, in U.S. v. GoodRx Holdings, Inc., et al., on _____ __, 20___.

I was not a Defendant in that court case.  My title or relationship with Defendant is _____.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on _____, 20__.

Signed: _____